UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:14-CV-332-M
*ELECTRONICALLY FILED*

JOSE A. GUTIERREZ and ARELI TAPIA                                    PLAINTIFFS

v.                              **COMPLAINT**

COOPER TIRE & RUBBER COMPANY
Attn: Tax Department
701 Lima Avenue
Findlay, OH 45840

Serve:    C T Corporation System
          306 W Main St, Suite 512
          Frankfort, KY 40601

- and –

FORD MOTOR COMPANY
One American Road, Room 612
Dearborn, MI 45126

Serve:    C T Corporation System
          306 W Main St, Suite 512
          Frankfort, KY 40601                                         DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

Come the Plaintiffs, Jose A. Gutierrez and Areli Tapia, and for their Complaint herein, state as follows:

1. At all times material hereto, Plaintiff, Jose A. Gutierrez was and is a resident of Kentucky.

2. At all times material hereto, Plaintiff, Areli Tapia was and is a resident of Kentucky.

3. The injuries and damages claimed herein exceed the minimum jurisdictional limits of this Court.

4. The events and injuries giving rise to this Complaint occurred in Frankfort, Franklin County, Kentucky.

5. On or about April 23, 2013, Yahir (Jair) Gutierrez and Areli Tapia, were passengers in a 1996 Ford Explorer, VIN 1FMDU32X8TZB76677, operated by Jose A. Gutierrez travelling west on Highway 64 near the 56 mile marker.

6. While travelling the interstate speed, the driver side rear tire suffered a catastrophic tread separation causing the Explorer to suddenly and unexpectedly begin swerving.

7. Jose A. Gutierrez was unable to regain control of the Explorer and it left the roadway.

8. The vehicle rolled over multiple times resulting in severe injuries to Jose A. Gutierrez, Areli Tapia, and fatal injuries to Yahir (Jair) Gutierrez.

9. Defendant Cooper Tire & Rubber Company ("Cooper") is a Delaware Corporation with its principal place of business in Findlay, Ohio. At all times relevant, Cooper designed, manufactured, and sold the tire in question, and was in the business of designing, manufacturing, selling, and placing in the stream of commerce tires such as the tire at issue and in Kentucky. The failed tire is identified as a Cooper Discoverer A/T 235/70R15 bearing DOT number "3DM1C4X1704" manufactured by Cooper Tire & Rubber Company (hereinafter referred to as the "Subject Tire" or the "Failed Tire").

10. On February 14, 1990, Ford Motor Company began producing the Explorer SUV and produced over one million Explorers. On information and belief, the "Z" in the 11th position of the 1996 Ford Explorer's VIN# (1FMDU32X8TZB76677) discloses it was produced at the St. Louis Assembly plant in Hazelwood, Missouri.

## COUNT I
### Strict Liability as to Defendant Cooper Tire

11.1   Plaintiffs incorporate herein by reference Paragraphs 1 through 10.

11.2   The subject tire was defectively designed by Cooper Tire.

11.3   The subject tire was defectively manufactured by Cooper Tire.

11.4   The subject tire was defectively marketed by Cooper Tire.

11.5   The subject tire was unreasonably dangerous at the time it was designed, manufactured, marketed and distributed by Defendant Cooper Tire.

11.6   The defective tire came apart while still within its expected life-use. This was due to a manufacturing defect consisting of a lack of permanent bond between the components of the tire which caused it to come apart and rapidly deflate, resulting in the injuries and death suffered by the Plaintiffs.

11.7   When it designed, manufactured, and sold the tire in question, Cooper Tire was in the business of designing, manufacturing, selling, and placing in the stream of commerce tires such as the tire at issue. The failed tire was defectively designed, manufactured, and marketed in a negligent and malicious manner, and it was in an unreasonably dangerous and unfit condition at the time it left the control of Cooper Tire. The tire at issue failed during its useful tread life as a result of a separation of the tread and upper belt from the lower belt and carcass as a result of manufacturing and design defects and maliciously and grossly negligent practices.

11.8   Aside from foreseeable wear and aging, the subject tire was in the same defective condition at the time of the crash as it was when it left Cooper Tire's possession. The tire at issue was expected to and in fact reached its consumer market in the defective and unfit condition in which the tire was originally sold. The defective and unreasonably

3

dangerous conditions of the tire were a producing and proximate cause of the incident made the basis of this suit and resulting damages.

   11.9  Technologically and economically feasible safer alternative designs existed that would have prevented or significantly reduced the risk of injury without substantially impairing the utility of the product. These safer alternative designs were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge. The safer alternative designs include, but are not limited to the following:

    a. The use of belt edge gums strips ("BEGS") or proper use of other belt edge rubber strips or wedges or insulation or wraps,
    b. The use of spirally-wound overwraps ("SNOW") or proper use of nylon or Kevlar belt reinforcements whether used in strips or caps or belts or full-belt-width plies,
    c. Proper rubber antidegradants including a proper antioxidant package,
    d. Proper innerliners with sufficient lapped splicing and sufficient rubber gauge and sufficient amounts of halobutyl rubber to guard against the permeation of air into the tire,
    e. Slower tire curing at lower temperatures, and
    f. Other tire aging and separation countermeasures.

   11.10  In contrast to other tire manufacturers, Cooper Tire designed and manufactured the tire at issue without a proper strip of additional rubber at the belt edges.

   11.11  In contrast to other tire manufacturers, Cooper Tire designed and manufactured the tire at issue without a nylon cap ply.

   11.12  There are no applicable mandatory safety standards regarding the risk of tread separations, and the regulations regarding tires are inadequate to protect the public from unreasonable risks of injury, and one reason for the inadequacy of these regulations is Cooper Tire's lack of candor in connection with the government's determination of the adequacy of tire regulations.

   11.13  As a direct and proximate result defective design, manufacture, and/or marketing of the subject tire and its ultimate failure, Plaintiffs, Jose A. Gutierrez, Areli

4

Tapia, suffered serious injuries and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT II
## Breach of Warranty Of Merchantability By Cooper Tire

12.1   Plaintiffs incorporate herein by reference Paragraphs 1 through 11.13.

12.2   At all relevant times, Cooper Tire was in the business of supplying tires.

12.3   At all material times, Cooper Tire committed a breach of the warranty of merchantability in that the defective tire was not fit for its ordinary use.  The Plaintiffs were persons who would foreseeably be damaged by the breach of warranty of merchantability by the Defendant.  As a result of the breach of warranty of merchantability by the Defendant Cooper Tire, Plaintiffs, Jose A. Gutierrez, Areli Tapia, suffered serious injuries and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT III
## Breach of Express Warranty By Cooper Tire

13.1   Plaintiffs incorporate herein by reference Paragraphs 1 through 12.3.

13.2   Cooper Tire committed a breach of the express warranty, including but not limited to an express warranty that the goods shall be free from defect and safe for their intended purpose.  As a result of the breach of express warranty by the Defendant Cooper Tire, Plaintiffs, Jose A. Gutierrez, Areli Tapia, suffered serious injuries and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT IV
## Negligence of Defendant Cooper Tire

14.1   Plaintiffs incorporate herein by reference Paragraphs 1 through 13.2.

14.2   Defendant Cooper was negligent in its errors and omissions in designing,

5

manufacturing, marketing, selling and/or inspecting, warning and instructing the motoring public of the dangers inherent in said tire including but not limited to the following:

    a. Cooper failed to adequately test and inspect the subject tire before its initial sale.
    b. Cooper owed a legal duty of care to Plaintiffs and to the motoring public at large concerning the design, manufacture, marketing and sale of the subject failed tire. Cooper breached this duty of care in that the failed tire had a propensity to lose its tread/belt under normal and foreseeable operating conditions.
    c. As a direct and proximate result of this known propensity to separate, Cooper breached their legal duty of care owed to Plaintiffs in the sale of said tire. Said breach of duty and negligence was the direct and proximate cause of the serious injuries, deaths and damages sustained by Plaintiffs.

    14.3    Cooper, as designer, seller and manufacturer of the failed tire, was further negligent by failing to keep up with scientific knowledge and advances in the field which were reasonably available at the time of the initial manufacture of the subject tire. Cooper failed to provide additional post-sale warnings and instructions after said tire was initially sold and placed into the stream of commerce and failed to advise the public including Plaintiffs of the known and foreseeable propensity of the Cooper Discoverer tire to suffer sudden unexpected tread/belt separation during normal and foreseeable use. This breach by Cooper of its continuing duty to warn was a direct and proximate cause of the injuries, deaths and damages to Plaintiffs.

    14.4    Cooper was further negligent in its failure to follow the recommendations of a durability team it formed to help prevent tread/belt separations.

    14.5    Cooper has possession of internal documents and testimony confirming as far back as 1995 they were experiencing an increase in tread/belt separations in its passenger and light truck tires.

    14.6    Cooper has possession of internal documents and testimony confirming that its employees called the increase in tread/belt separations a "problem."

14.7 Cooper has possession of internal documents and testimony confirming that in 1999 it formed a tire durability team.

14.8 Cooper has possession of internal documents and testimony confirming that in 2000, the tire durability team identified three key recommendations that could be made to improve the durability of its tires.

14.9 Cooper has possession of internal documents and testimony confirming that one of the key recommendations made by the tire durability team in 2000 was to implement a more robust antidegradant system into the belt compound.

14.10 Cooper has possession of internal documents and testimony confirming that one of the key recommendations made by the tire durability team in 2000 was to add belt edge gum strips into certain tire lines and sizes.

14.11 Cooper has possession of internal testing conducted prior to the manufacturing of the subject tire demonstrating belt edge gum strips provide an improved resistance to belt edge separations.

14.12 Cooper has possession of internal documents and testimony that confirm when Cooper made the subject Discoverer tire, it had knowledge that its tires would achieve improved durability with respect to the tires' susceptibility to belt and tread separations with the addition of a strip of rubber at the belt edges.

14.13 Cooper has possession of internal documents and testimony that confirm when Cooper made the subject Discoverer tire, it had knowledge that the majority of its competitors used an addition of a strip of rubber at the belt edges.

14.14 Cooper has possession of internal documents and testimony that confirm when Cooper made the subject Discoverer tire, it had knowledge that its tires would

achieve improved durability with respect to the tires' susceptibility to belt and tread separations with the addition of a nylon reinforcement.

14.15 Cooper has possession of documents, testimony, and information that confirm Cooper made the subject Discoverer tire despite knowledge that its tires were technologically lagging behind the tires made by Cooper's competitors.

14.16 Cooper has possession of documents, testimony, and information that confirm Cooper made the subject Discoverer tire despite knowledge of alternative designs that would reduce the occurrence of belt and tread separations.

14.17 Cooper has possession of documents, testimony, and information that confirm that when Cooper made the subject Discoverer tire, it had knowledge of a growing trend of increasing numbers of liability claims involving failed Cooper tires, both domestically and in the Middle East.

14.18 Cooper has possession of documents, testimony, and information that confirm that when Cooper made the subject Discoverer tire, it had knowledge of a growing trend of increasing numbers of adjustment tires involving failed Cooper tires, both domestically and in the Middle East. Cooper has possession of documents, testimony, and information that confirm that when Cooper made the subject Discoverer tire, it had knowledge of a growing trend of increasing numbers of adjustment tires in hot weather climates

14.19 Cooper has possession of testimony from its former President that confirms it is difficult and potentially not possible for the average person to maintain control of a vehicle after a tread belt detachment when the tire loses air.

14.20 The information, documents and testimony in Cooper's possession prove Cooper breached its duty to Plaintiffs, and that said breach was the proximate cause of

Plaintiffs, Jose A. Gutierrez and Areli Tapia's, serious injuries and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT V
### (Negligence as to Defendant FORD)

15.1 Plaintiffs re-allege and incorporate the above paragraphs 1 through 14.20.

15.2 Defendant Ford, as the manufacturer of the subject vehicle, was under a duty to exercise ordinary care in the design of its product used by the Plaintiffs to reduce injuries from use of such product.

15.3 Defendant Ford designed the subject vehicle in such a manner as to create a danger which was unknown to the Plaintiffs, or any other user, under ordinary use and normal function of the subject vehicle.

15.4 Defendant Ford breached its duty of reasonable care owed to Plaintiffs in that Defendant:

    a. the vehicle was defective in that it did not incorporate a safety feature that would have prevented the vehicle from rolling over on a dry flat roadway, i.e. an electronic stability control system. Further, the vehicle is defective in that in the event of a foreseeable rear tread separation, the driver cannot maintain control;
    b. the vehicle was improperly and inadequately tested by Defendants; and
    c. marketing the vehicle in such a way as to mislead consumers as to safety and crashworthiness of subject vehicle.

15.5 The negligence of Ford was the proximate and producing cause of Plaintiffs, Jose A. Gutierrez and Areli Tapia's, serious injuries and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT VI
### (Strict Liability as to Defendant FORD)

16.1 Plaintiffs re-allege and incorporate the above paragraphs 1 through 15.5.

16.2    At all times relevant, Ford was engaged in the business of designing, manufacturing, constructing, selling and distributing Ford vehicles, including the vehicle involved in this incident.  On April 23, 2013, the Ford Explorer vehicle involved in this incident was in substantially the same condition as it was when it was originally sold.

16.3    The subject Ford Explorer designed, manufactured, constructed, and assembled by Defendant Ford was defective at the time the vehicle left Defendant Ford's control in that:

    a.    the vehicle was defective in that it did not incorporate a safety feature that would have prevented the vehicle from rolling over on a dry flat roadway, i.e. an electronic stability control system.  Further, the vehicle is defective in that in the event of a foreseeable rear tread separation, the driver cannot maintain control;

    b.    the vehicle was improperly and inadequately tested by Defendants; and

    c.    marketing the vehicle in such a way as to mislead consumers as to safety and crashworthiness of subject vehicle.

16.4    The subject Ford Explorer was defective as marketed in that the advertising and marketing campaigns and programs undertaken by Ford misled consumers as to the handling, maneuverability, stability, and safety features of the Ford and failed to warn consumers of the dangerous conditions inherent in the design of the vehicle as described more fully herein, including propensity to rollover and lack of crash worthiness.

16.5    The defective and unreasonably dangerous condition of the subject vehicle was the proximate and producing case of the serious injuries to Plaintiffs Jose A. Gutierrez and Areli Tapia and the loss of love, society, affection, companionship and consortium of their child, Yahir (Jair) Gutierrez.

## COUNT VII
## PUNITIVE DAMAGES

17.1    Plaintiffs re-allege and incorporate the above paragraphs 1 through 16.5.

17.2    Ford designed and marketed the 1996 Explorer with a reckless disregard of public safety in that it knew there was a substantial risk of serious injury or death from rollover and failed to reduce this known risk to and acceptable minimum level despite the fact that it knew the cost of reducing the risk would have had minimal impact on Ford's margin of profit on the Ford Explorer.

17.3    Cooper Tire designed and marketed its tires with a reckless disregard of public safety in that it knew its tires were prone to separate, especially in warmer climates, and that tread separation poses a substantial risk of serious injury or death. Cooper Tire chose not to remedy this defect or warn consumers, despite this knowledge.

17.4    The aforesaid actions of the Ford and Cooper Tire Defendants constitute malicious, willful, and wanton conduct or gross negligence making them liable to the Plaintiffs for punitive damages.

## COUNT VIII
## PERSONAL INJURIES

18.1    Plaintiffs re-allege and incorporate the above paragraphs 1 through 17.4.

18.2    As a direct and proximate result of the negligence, gross-negligence, willful misconduct, breach of express and implied warranties, strict liability, misrepresentation and willful omissions of the Defendants, Plaintiffs Jose A. Gutierrez and Areli Tapia lost the love, affection, services, guidance, and enjoyment of their son Yahir (Jair) Gutierrez.

**WHEREFORE,** the Plaintiffs demand judgment against Defendants and each of them individually, jointly and severally for an amount in excess of the jurisdictional minimum of this Court for both compensatory damages, including damages for loss of consortium, for physical and mental pain and suffering, emotional distress, and punitive damages, interest; trial by jury; for costs herein expended, including but not limited to attorney's fees; costs of the actions, and all relief to which they may appear entitled and trial by jury.

    Respectfully submitted,

    <u>/s/  Hans G. Poppe</u>
    Hans G. Poppe
    Warner T. Wheat
    Scarlette R. Burton
    Kirk A. Laughlin
    THE POPPE LAW FIRM
    Justice Plaza
    8700 Westport Road, Suite 201
    Louisville, Kentucky 40242
    (502) 895-3400
    (502) 895-3420 (fax)
    Hans@PoppeLawFirm.com
    Warner@PoppeLawFirm.com
    Scarlette@PoppeLawFirm.com
    Kirk@PoppeLawFirm.com

    Counsel for Plaintiffs